(December 28, 1898.)

# BRYAN v. MONTANDON.

[55 Pac. 650.]

TRANSFER OF STOCK—DURESS—BONA FIDE HOLDER.—The transfer of stock by a married woman, although procured by duress and coercion on the part of her husband, is good under the statutes of Idaho, where the transferee is a *bona fide* holder for value without notice or knowledge of such duress or coercion.

(Syllabus by the court.)

APPEAL from District Court, Blaine County.

A. F. Montandon, for Appellant.

Respondent could have anticipated the pledge, since the duress ceased, by telegraphing McCornick of the duress. She did nothing; thereby she exercised her option in favor of Mc-Cornick, and unless McCornick had actual notice of the duress or fraud, he took a good pledge, if on the faith of it he parted with value. The complaint fails to charge McCornick with notice, and shows he parted with value. McCornick obtained a good and valid pledge, and when she says she made no effort at any time between the time when the duress ended and July 28, 1896, a period of over twenty months, the conclusion is irresistible that McCornick had a perfect pledge. Our code seems to cover the whole ground as to him. (Section 3023 says, title 6, chapter 5, "Unlawful Transfers"; section 3414, title 12, chapter 5, "Pledge"; Clark on Contracts, 363, 770; Norton on Bills and Notes, 248, 249; Newmark on Sales, secs. 197-205; *Deputy v. Stapleford,* 19 Cal. 302; *Connecticut L. Ins. Co. v. McCormick,* 45 Cal. 580; *Muir v. Jones,* 28 Or. 646, 31 Pac. 646; *Gruber v. Baker,* 20 Nev. 453, 23 Pac. 858; *Braxton v. Bell,* 92 Va. 229, 23 S. E. 289; *Ross v. Richolson,* 3 Kan. Ap. 239, 45 Pac. 97; *Dunn v. Dunn,* 114 Cal. 210, 64 Pac. 5.)

Lyttleton Price and Texas Angel, for Respondent.

A married woman cannot dispose of her separate property without certain formalities which were omitted in· this case. It is true that transfer of corporate stock is excepted from this general provision of statute, but it appears that here there was no transfer, nor was there, indeed, any disposition of the stock made by the wife at all. It was her separate property. She had no voice in its disposal. Her husband used it for his own purposes and if it be said to be with her consent, extorted from her under duress, it was not with the formality provided by law for her protection. (Idaho Rev. Stats., sec. 2498; *Dernham v. Rowley,* 4 Idaho, 753, 44 Pac. 643.)

HUSTON, J.—The plaintiff, wife of George V. Bryan, brings this action to recover one thousand shares of stock of the G. V. B. Mining Company, a corporation existing under the laws of the state of New York. The facts as they appear in the record are substantially as follows: That from about May 18, 1894, to the 25th of October, 1894, the plaintiff was holder and owner of said stock. At said last-mentioned date the husband of plaintiff, and one John Bryan, his brother, and G. W. Venable, an uncle of said George V. Bryan, were engaged in working and operating certain mines in Owyhee county, in this state. That at about said last-mentioned date the exigency of their said business or operations required them to raise a certain amount of money. In the negotiating of a loan thereof, it became necessary to put up collaterals as security for such loan; and to this end the plaintiff's said husband, George V. Bryan, demanded of her that she deliver to him said one thousand shares of stock of the said G. V. B. Mining Company, so as aforesaid held and owned by her, to be used by her said husband and his said copartners as collateral in the procuring of said loan, which the plaintiff refused to do.· Plaintiff alleges that upon such refusal by her the said G. W. Venable, together with her said husband and his said brother, "commenced a campaign of persecution against plaintiff, to force her to give up to them the said stock, and other property she had"; that

these persecutions drove the plaintiff to distraction, overcame her judgment, utterly destroyed all influence she had with her husband, and temporarily separated him from her, broke down her health, and resulted in so weakening her in health and in mind that in spite of her unwillingness, and against her objections and protests, they took the said stock from her, and pledged the same to McCornick & Co., of Salt Lake City, Utah, as security for the payment of a loan to them of $10,000. It is unnecessary to go into the details of the method by which the plaintiff was induced to give up to her husband the said stock. They reflect but little credit upon any of the parties engaged therein. The said shares of stock in the G. V. B. Mining Company, so procured from the plaintiff, together with other stocks, were by said George V. Bryan and G. W. Venable pledged to McCornick & Co., of Salt Lake City, as security for a loan of $10,000, evidenced by the promissory note of the said George V. Bryan and G. W. Venable. It does not appear that the defendant had anything to do with, or was in any way cognizant of, the chivalrous manner in which the said stock was procured from the plaintiff. The said note of George V. Bryan and G. W. Venable not being paid at maturity, it was renewed from time to time until January 6, 1896, when a note for the sum due thereon (there having been some payments of interest) was given, payable on demand. Some time in June, 1896, the said G. W. Venable came to the defendant, who was, and for some time prior to said date had been, the attorney of said Venable, and stated to him that G. V. Bryan and himself owed a note to McCornick & Co., of Salt Lake City, secured by fifteen hundred shares of G. V. B. Mining Company stock, one hundred shares of Bryan-Marsh Company stock, and ten thousand shares of Idaho Electric Supply Company stock; calling it Bryan's stock. He further said said note was long past due, and McCornick was pressing for payment; that if defendant would take up said note, and thereby prevent the sacrifice of said collaterals, he (said Venable) would additionally secure him by $8,000 Bryan-Marsh Company notes, and a claim he had against Bryan for $26,000. Said Venable

wished defendant to carry the note for six months longer. Venable offered the defendant, besides the security, one per cent per month on the money—the same rate paid to McCornick & Co.—and, if any dividends were paid by the Red Elephant Mine or Electric Supply Company, also one-half of such dividends, the other half to go toward paying the note. Defendant closed with offer of Venable, and on the 20th of June, 1896, went to Salt Lake City, and on the 22d of June, 1896, took up the said note and the security deposited with said McCornick. Upon his return home from Salt Lake City, defendant called upon Venable for additional security which he had been promised; but after repeated demands, and failing to get any additional security, except from $2,000 to $3,000 of Bryan-Marsh Company notes, and learning that the Red Elephant mine was not near out of debt, as he had been led to believe, and becoming uneasy, he made inquiry in regard to the other securities, from which inquiries he ascertained that the Electric Supply Company stock had been attached and sold on execution upon a judgment recovered against said G. V. Bryan. It was understood and agreed between defendant and Venable, prior to the taking up of the Bryan and Venable note by defendant, that whenever defendant deemed himself insecure, he might sell said securities and reimburse himself. Deeming himself insecure, the defendant proceeded, after giving due notice, to sell the said stocks so as aforesaid given as security for said Bryan and Venable note at public auction, when the writ in this action was served upon him. The case was tried before the district court with a jury. The jury made special findings, among which were the following: 1. That the stock certificate of G. V. B. Mining Company (No. 48), for one thousand shares, was obtained from the plaintiff by duress or coercion, and against the will of plaintiff; 2. There was a conspiracy between the defendant and G. W. Venable to secure the plaintiff's stock for the benefit of either, or both of them, without paying her therefor; 3. That duress or undue influence or other unlawful means, were used by the husband of the plaintiff, or G. W. Venable or John Bryan, to induce plaintiff to give up the certificate of stock in the

G. V. B. Mining Company for the purpose of being pledged or used to procure a loan for the benefit of the Tip Top Mining Company; 4. That such unlawful means were employed by G. V. Bryan, G. W. Venable, John Bryan, and S. B. Kingsbury; 5. That McCornick & Co., bankers, had no knowledge or notice that the said mining stock had been procured of plaintiff by duress or any other improper or unlawful means, at the time the said stock was pledged to them; 6. That said McCornick & Co. had notice that the original owner of said stock was a married woman at the time they received said stock as a security for a loan; 7. That McCornick & Co. retained said stock in their possession about twenty months; 8. That plaintiff never notified McCornick that she was the owner of said stock, or claimed any interest therein, or that said stock had been procured of her by duress, or any other unlawful means; 9. That defendant at the time he purchased said stock of McCornick & Co. had no knowledge or notice that the same was procured of plaintiff by duress, or any other unlawful means; 10. That defendant at the time he received said stock from McCornick & Co. knew that the stock in question belonged to, or was claimed by, a married woman. The court, after making some additional findings, to the effect that a conspiracy existed between G. W. Venable and the defendant to cheat the plaintiff out of the said stock, that the defendant is an attorney and counselor at law of said court, and that he bought said promissory note with intent to bring suit thereon, finds as matter of law that the plaintiff is the owner of, and entitled to the possession of, said shares of stock, and enters decree accordingly. From such decree, and from the order denying a new trial, this appeal is taken.

In reviewing the record in this case, we must say, *in limine,* that the methods and proceedings by which the transfer of the stock in question of the plaintiff to her husband was procured were iniquitous; and we think it is logically inferable from the record that the result of the trial was largely attributable to the effort to connect the defendant therewith, through and by reason of his relations with G. W. Venable. The jury found in answer to: "Question 9. Did defendant, at

the time he purchased said stock of McCormick & Co., have knowledge or notice that the same was procured of plaintiff by duress or any other unlawful means? Answer 9.   No." The jury find in their answer to question 2 that there was a conspiracy between defendant and G. W. Venable to secure the plaintiff's stock for the benefit of either or both of them without paying her therefor, but there is no evidence in the record supporting or warranting that finding.   The speculations and assumptions of counsel as to the purpose and motive actuating the defendant ought not to, and cannot, be made the predicate of legal conclusions, when unsupported by the evidence.   We are unable, from a very careful and critical examination of the record to find any act of the defendant which is logically or legally deserving of censure.   At the earnest solicitation of his friend and client, he advanced his money to protect that friend and client, as well as his partner, from apprehended loss and disaster.   That he expected to be reimbursed for his advances is presumable, and entirely in accord with every principle of honesty and fair dealing.   He did nothing, so far as the record shows, that was in the slightest degree reprehensible. That he was unfortunate in getting mixed up in such a miserable domestic broil as is developed by the record in this case is no doubt regretted more heartily by him than anyone else.

We cannot agree with counsel that the statements of the defendant make him obnoxious to the provisions of section 6524 of the Revised Statutes.   As before stated, defendant purchased the note and securities at the request of one of the makers of the note, and upon the agreement of such maker to fully reimburse him for the money advanced.   The argument of counsel based upon his construction of section 6524 of the Revised Statutes, would preclude the defendant, upon the failure of Venable to keep his agreements, from any remedy or relief whatever.   Such a position we do not think tenable.   The ninth finding of the court is not warranted by the evidence.

Counsel for respondent assumes that, because the certificate of stock was procured from plaintiff by coercion and duress, inflicted by her husband and those interested and associated with him, therefore the defendant, a bona fide purchaser for

value, without notice, nearly two years after plaintiff had transferred the stock, took no title thereto. A sufficient answer to that position is found in the provisions of our Revised Statutes, viz.: Section 2612 of the Revised Statutes of Idaho is as follows: "Shares of stock in corporations, held or owned by a married woman, may be transferred by her, her agent or attorney without the signature of her husband, in the same manner as if such married woman were a *feme sole.* All dividends payable upon any shares of stock of a corporation held by a married woman may be paid to such married woman, her agent or attorney, in the same manner as if she were unmarried, and it is not necessary for her husband to join in a receipt therefor; and any proxy or power given by a married woman touching any shares of stock of any corporation owned by her, is valid and binding without the signature of her husband, the same as if she were unmarried." Section 3023 of the Revised Statutes, under title "Unlawful Transfers," is as follows: "The provisions of this chapter do not in any manner affect or impair the title of a purchaser for a valuable consideration, unless it appears that such purchaser had previous notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor." Section 3414 of the Revised Statutes, under title "Pledge," is as follows: "One who has allowed another to assume the apparent ownership of property for the purpose of making any transfer of it, cannot set up his own title to defeat a pledge of the property made by the other, to a pledgee who received the property in good faith, in the ordinary course of business and for value." The judgment and decree of the district court are reversed, and the cause remanded. Costs to appellant.

Sullivan, C. J., and Quarles, J., concur.